UNITED STATES v. F. ROMEO & CO., Inc., et al.

SAME v. SCARAMELLI & CO., Inc., et al.

(District Court, S. D. New York. June 7, 1918.)

CUSTOMS DUTIES ⬥86—INVOICES—BONDS FOR PRODUCTION OF INVOICE.

Under Tariff Act, par. E, § 3 (Comp. St. § 5522), providing that, when entry of merchandise exceeding $100 in value is made by a statement in the form of an invoice, the collector shall require a "bond for the production of a duly certified invoice," the collector has no authority to exact from an importer a bond for any further or other purpose; and where an importer, upon entry of merchandise, prior to payment of duty on an appraised value, gave a bond providing that the obligor should pay the collector "the amount of duty to which it shall appear by such invoice the said goods imported were subject over and above the amount duly estimated on appraisement," the bond was void and of no effect.

At Law. Separate actions by the United States against F. Romeo & Co., Incorporated, and another, and against Scaramelli & Co., Incorporated, and another, upon a bond given in each case. Judgment for defendants, dismissing the complaint, in each case.

Francis G. Caffey, U. S. Atty., and John E. Walker, Asst. U. S. Atty., both of New York City, for the United States.

Thomas M. Lane, of New York City, for defendants Romeo & Co., Inc., and another.

Allan R. Brown, of New York City, for defendants Scaramelli & Co., Inc., and another.

MAYER, District Judge. These two actions are at law, a jury was waived in each, they were both tried together, and both involve the same question. A statement of the undisputed facts in the Romeo Case will suffice for both cases.

On March 20, 1916, F. Romeo & Co., Incorporated, imported at New York 200 cases of cheese, which were duly entered at the custom house. The cheese was dutiable at 20 per cent. ad valorem under Schedule G, paragraph 196, of the Tariff Act of October 3, 1913, c. 16, 38 Stat. 114 (Comp. St. § 5291). At the time of making the entry the certified consular invoice for the merchandise had not appeared, and the importers made entry on a pro forma invoice, or statement in the form of an invoice, as permitted by section 3, paragraph E of the Tariff Act (Comp. St. § 5522), giving bond for the production of a duly certified invoice. The provision in question is as follows:

"And when entry of merchandise exceeding $100 in value is made by a statement in the form of an invoice, the collector shall require a bond for the production of a duly certified invoice."

The value stated for the cheese in the pro forma invoice was 270 lire per 100 kilos, packing included. Upon filing their entry, the importers made an addition therein sufficient to raise the unit value of the merchandise to 300 lire per 100 kilos, packing included. This addi-

tion was made under certificate, in order to meet advances made by the appraiser in similar cases then pending on appeal for reappraisement, as permitted by section 3, paragraph I of the Tariff Act of October 3, 1913 (Comp. St. § 5527). The appraiser approved the entered value of 300 lire per 100 kilos, packed, and indorsed on the pro forma invoice, "Estimated packing charges 7 lire per case." The importers then took an appeal to a United States General Appraiser, who found the actual market value or wholesale price of the merchandise, at the time of exportation, in the principal markets of the country whence exported, to be 265 lire per 100 kilos, packing extra. The importers thereupon made application to the Secretary of the Treasury, under said paragraph I, for a reduction of the entered value, which was granted by the Department, and the collector instructed to liquidate the entry upon the basis of the reappraised value. The collector thereupon liquidated the entry at a value of 265 lire per 100 kilos, plus packing at 7 lire per case, and the duties assessed upon said value were paid.

Thereafter the importers produced a certified consular invoice as required by the bond. This invoice stated a unit price for the merchandise of 340 lire per 100 kilos, packing, consular certificate, insurance, and export tax included, or at the rate of 331.21 lire per 100 kilos, packed, after deducting the nondutiable charges for consular certificate, insurance, and export tax.

The price of 265 lire per 100 kilos found by said General Appraiser, and upon which duties were computed by said collector, with an addition of 7 lire per case for packing charges, was the actual market value or wholesale price at which said merchandise was sold for home consumption in the principal markets of Italy, and the net price of 331.21 lire per 100 kilos, packed, stated in said certified consular invoice, was the price at which said goods were sold in Italy for exportation to the United States, and was higher than the price at which the merchandise was or could be sold at the time of exportation for home consumption in the Italian markets. The reason for the discrepancy between the price for home consumption in Italy and the price for export was that the Italian government, on account of the war, permitted the exportation of cheese only under a government license, from which it resulted that cheese for which export license had been issued commanded a higher price, due to the inclusion of a charge for said export license, than could be obtained for the same cheese bought for home consumption in Italy.

At the time of and preceding the entry of the goods, the collector of customs at the port of New York would permit entry and delivery of merchandise upon a pro forma invoice only upon the filing of a written instrument in the following form:

"Whereas, the above-bounden principal has applied to the collector of customs at the port of New York to make entry of certain goods, wares, and merchandise imported in the Caserta from Naples, and described in consumption entry No. 144122, dated March 20, 1916.

"And whereas, it is temporarily impracticable for the said principal to produce a proper invoice thereof, duly authenticated according to law, by reason

whereof entry of the said goods, wares, and merchandise is allowed upon the execution of this bond:

"Now, therefore, the condition of this obligation is such that, if the above-bounden obligors shall and do within six months from the date hereof produce to the said collector of customs a duly authenticated invoice of the said goods, wares, or merchandise, and shall pay to the said collector the amount of duty to which it shall appear by such invoice the said goods, wares, or merchandise are subject, over and above the amount of duties estimated on the appraisement of said goods, wares, or merchandise, then the above obligation shall be void; otherwise, it shall remain in full force and effect."

No other form of bond for the production of consular invoices was accepted by the collector, and defendants could not obtain entry upon a pro forma invoice, nor obtain delivery of their said merchandise in any other way than by filing a bond in this form. It is also agreed between the parties that the form of bond used in this case is an old form, which was in use prior to August 5, 1909, and that the form was not changed by the government, notwithstanding changes in the law made at that time.

The government brings this suit upon the bond to recover duty at 20 per cent. upon the difference between the reappraised and liquidated value of 265 lire per 100 kilos, plus packing at 7 lire per case, or 272 lire per 100 kilos, packed, and the consular invoice price of 331.21 lire, packed. The question in the case is whether there is any authority in law for the provision in the bond that the obligor shall pay to the collector "the amount of duty to which it shall appear by such invoice the said goods * * * are subject over and above the amount of duties estimated on the appraisement of said goods." The provision of the statute is simple and plain. It merely provides that the collector shall require a bond for the production "of a duly certified invoice." When such invoice shall have been duly produced, the obligation of the bond is satisfied.

There is no authority whatever conferred upon the collector to exact a bond for any further or other purpose, and in so far as this bond goes beyond the limitations of the statute it is void and of no effect. The construction of the statute seems so plain and simple that a citation of authority is unnecessary. My attention, however, has been called to the opinion of the Board of General Appraisers in the case reported as T. D. 34999, G. A. 7651, and found in the pamphlet of Treasury Decisions dated December 24, 1914, this case appearing as United States v. Marquardt, 6 Ct. Cust. App. 168. I find that I am in agreement with the Board of General Appraisers on the point here under consideration. A contrary view is expressed in United States v. Hobbs, 3 Ct. Cust. App. 256. With this latter case, however, I am unable to agree.

In view of the foregoing, the defendants in each case may have judgment dismissing the respective complaints.

Submit findings on notice.